IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

CASE NO.:

HEIDI LUCAS, an individual,

        Plaintiff,

vs.

COLLECTION RECEIVABLES, INC.,
a Georgia corporation,

        Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, Heidi Lucas, an individual, sues Defendant, Collection Receivables, Inc., a Georgia corporation, and alleges:

### INTRODUCTION

1. This is an action for violation of 15 U.S.C. §1692, *et seq.*, known more commonly as the "Federal Fair Debt Collection Practices Act" ("FDCPA"), and Florida Statute §559.551, *et seq.*, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

### JURISDICTION

2. Jurisdiction of this Court arises under 15 U.S.C §1692k and 28 U.S.C.§1337, and supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C.§ 1367.

### ALLEGATIONS AS TO PARTIES

3. At all times material hereto, Plaintiff, Heidi Lucas ("Ms. Lucas"), was *sui juris* and a resident of Bay County, Florida.

4. At all times material hereto, Defendant, Collection Receivables, Inc. ("Collection Receivables"), was a Georgia corporation doing business in Bay County, Florida.

5. At all times material hereto, Collection Receivables was and is engaged in the collection of consumer debts using mail and telephone communications to debtors in the State of Florida.

6. Defendant is properly subject to jurisdiction in the courts of this State pursuant to Florida Statute §48.193 by operating, conducting, engaging in, or carrying on a business in this state, committing a tortious act within the state, and/or causing injury to persons within the state arising from an act or omission by Defendant outside the state, when Defendant was engaged in debt collection activities within the state.

7. All acts and omissions of any agent, employee or representative of Defendants were committed with the express, implied, or apparent authority of Defendants or were subsequently ratified by Defendants.

## FACTUAL ALLEGATIONS

### A. History of Collection Abuse and Harassment Practices of Collection Receivables

#### 1. *Introduction*

8. In order to collect a debt, most debt collectors are limited to communicating by mail or by phone. The efficacy of such communications is problematic. With small debts, the cost of postage for repeated and potentially unopened mail is prohibitive. With the pervasiveness of "caller id," many persons refuse to answer calls from numbers associated with a debt collector or from unknown parties.

9. If a debt collector is unable to communicate with a consumer, the collector is unable to coax (or in worse case extort) payment. To overcome the problem, some law-breaking debt

collectors reach out to third parties such a neighbors, friend and relatives to unwittingly aid in collections.

10. The FDCPA provides for strict limitations on such third-party communications:

> (b) Communication with third parties—Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b)

11. The provision's strict limitations on third-party contacts make it one of the FDCPA's most important protections. According to the Senate report:

> [T]his legislation adopts an extremely important protection . . . it prohibits disclosing the consumer's personal affairs to third persons. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as loss of job.

S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

12. Congress provided a very detailed, narrow exception to the broad general prohibition of third-party contacts in Section 1692c(b) to allow collectors to locate a debtor:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall–
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
> (2) not state that such consumer owes any debt;
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;
> (4) not communicate by postcard;
> (5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt

    collector is in the debt collection business or that the communication relates to the collection of a debt; and

      (6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

                                                                                        15 U.S.C. § 1692b

13. Contacting third parties by a debt collector has a significant potential to harass and abuse consumers.  After all, few persons wish to be embarrassed by having neighbors, friends and family members contacted by a debt collector.

15. Not surprisingly many debt collectors feign use of the narrow "locator" exception to harass consumers by contacting third parties in a collection industry practice known as a "block party."  As one expert on debt collection testified to Congress:

> "*Each bill collector has a crisscross directory. Armed with this and the consumer's address, the phone numbers of the consumers' neighbors are at their disposal.  Collectors are able to use some of their favorite tricks like the block party. A block party is where the collector contacts handfuls of neighbors close to or far away, depending how mad the collector is. Block parties are often held for consumers who hang up on bill collectors.*"

                                        The Fair Debt Collection Practices Act: Hearing before the Subcommittee on Consumer Affairs and Coinage of the Committee on Banking, Finance, and Urban Affairs, House of Representatives, One Hundred Second Congress, second session, September 10, 1992.

### *2. Pattern and Practice of Misconduct*

16. Collection Receivables has acquired a reputation among consumers for abusive collection practices. Consumer complaints against Collection Receivables for these practices are scathing and too numerous to quote in full.

15. Consumers have registered their objections to the unlawful practice of "block parties" by Collection Receivables on the internet, including social media, blogs, and other forums:

*From Better Business Bureau (last accessed- 11/05/19)*

> Tracy L
> 11/05/2019
> This place is horrible.. I unfortunately went through a horrible month and was not able to get back with them in time.. **they contacted my neighbor who is well over 80. Made her come to my door with a note**. The lady almost fell and could have been going to a home that was dangerous.. I felt so bad for this lady.. Its so many bad things happening to people and this company could careless.. This needs to be addressed asap!! No one should be told to put their lives in danger because of a bill that you all want paid. Its nobody's responsibility but the person being billed. You all are horrible and I hope you get shut down immediately.. you put another person's life in danger and you could careless.. shame on you and this company
>
> (emphasis added by Plaintiff)

> 12 months ago
> 706.736.6746; they cussed my boss out and threatened me. My check for a dental service was lost in the mail and has since been sorted out between the dentist and I. Some crazy asshole named Beth Samuels called my job, myself, and my mother and acted as if someone had died. I called them back and they were rude, cursing at me, and treating me like I was a dog. I can't believe the level of disrespect they consider themselves, and I can't believe any professional business would use them. Good luck getting money out of people who ACTUALLY owe them, the way they speak to people is DISGUSTING and if I didn't love my dentist, I'd tell them both to shove it.

> Submit a Complaint filed by: John
>
> about 2 years ago
> **This lady named Rita is harassing me, she called a neighbor** I don't even know down the street who came to my house to give me a message. This can't be legal!
>
> (emphasis added by Plaintiff)

*From https://800notes.com/Phone.aspx/1-706-736-3114 (last accessed- 11/05/19)*

---

**TJT**
8 Oct 2010 | 1 reply
I received a phone call from this number asking me to pass along a message to a neighbor.

---

**MLA**
8 Jun 2011
Asked me to give a neighbor a message to call Kim Jones at 706-736-3114

---

**BNA**
25 Jun 2012
Caller ID read "CRI". "HIllary" asked us to go across the street and give our neighbor a message. We won't. Really low to get a neighbor involved

---

**Nicole**
13 Sep 2014
Jessica called our neighbors house while he was asleep & asked him to give us a msg. I've asked these people to please stop harassing everyone I know. My husband has had a stroke & I have MS

---

### B.  Details of Collection Abuse and Harm Experienced by Ms. Lucas

#### *1.   Disputed Gym Bill of Ms. Lucas*

16. In August 2019, Ms. Lucas entered into a "Personal Training Services Agreement" ("Fitness Contract") with Sequence Fitness ("Sequence Fitness").

17. In February 2020, the credit card that Ms. Lucas used to auto-pay the Fitness Contract expired which resulted in unpaid gym dues for February and March ("Gym Bill").

18. In March 2020, the gym operated by Sequence Fitness closed because of the COVID-19 pandemic.

19. Shortly before the closure of the gym, Ms. Lucas was involved in a motor vehicle accident which necessitated that she temporarily suspend her gym membership with Sequence Fitness. To add to her health problems, Ms. Lucas also contracted COVID-19 which caused her to be unable to use the gym.

20. For several weeks, Ms. Lucas tried in vain to contact Sequence Fitness to suspend her gym membership and to provide a current credit card to pay the Gym Bill.

21. As a result of the COVID-19 closure, Ms. Lucas was unable to contact a representative of Sequence Fitness to suspend her account or pay the Gym Bill.

22. Instead of having representatives available to address the concerns of Ms. Lucas, Sequence Fitness instead allowed the Gym Bill to accrue even though Ms. Lucas was unable to use the gym.

23. In August 2020, Ms. Lucas finally communicated with Sequence Fitness which demanded that Ms. Lucas pay for the several months charges that accrued since the COVID-19 pandemic.

24. As Ms. Lucas had not used the gym and was unable to suspend her gym membership, Ms. Lucas refused to pay the Gym Bill.

### 2. Unlawful Communication with Neighbor

25. In September 2020, Sequence Fitness retained Collection Receivables for the purpose of collecting the Gym Bill.

26. On Thursday, September 8, 2020, Collection Receivables telephoned the next-door neighbor of Ms. Lucas, Mary Lou Dotson ("Mrs. Dotson").

27.     The call to Ms. Dotson was not to locate Ms. Lucas. Rather, Collection Receivables purposely started a "block party" to embarrass and coerce Ms. Lucas into paying the Gym Bill.

28.     Mrs. Dotson is an 85-year-old senior whose relationship with Ms. Lucas was limited to a causal greeting when outside their respective homes. Indeed, until the event described here, Ms. Lucas only knew Mrs. Dotson by her first name.

29.     According to Mrs. Dotson, a person by the name "*Rita James*"[1] had called her.

30.     "Rita James" did not state to Mrs. Dotson that she was confirming or correcting location information concerning Ms. Lucas as the consumer.

31.     "Rita James" instead requested Mrs. Dotson to "*give a note to your neighbor Heidi Lucas requesting that she call me.*"[2]

32.     The FDCPA does not allow for third-party note couriers. 15 U.S.C. § 1692b is clear that the communication is limited to confirming or correcting location information concerning a consumer.

33.     Following the request of "*Rita James*," Mrs. Dotson wrote down the name and telephone number. An image of the note follows:



---

[1] As seen in prior complaints, the collector who used the name "Rita James" engaged in exactly the same wrongful conduct of contacting neighbors to bring messages to consumers.
[2] Also, from the prior complaints, "Rita James" appears to target senior neighbors.

34. A short time later, Mrs. Dotson went to Ms. Lucas' house and handed Ms. Lucas with the comment "*this woman wants you to call her*."

35. Ms. Lucas was confused as she did not know a "*Rita James*."

36. Not knowing the purpose of the call by "*Rita James*," Ms. Lucas later telephoned the number provided on the note.

37. To the great shock of Ms. Lucas, Ms. Lucas learned that "*Rita James*" was a collection employee of Collection Receivables. Ms. Lucas was mortified and outraged at the insolence of the collector using her elderly neighbor to collect a debt. The emotional impact on Ms. Lucas was especially great as she had been attempting to resolve the disputed Gym Bill directly with Sequence Fitness despite being in guarded health.

### *3. Lack of Meaningful Identification*

38. After the call by Ms. Lucas, Collection Receivables telephoned the cell phone of Ms. Lucas repeatedly. As Ms. Lucas did not pick up on the calls, Ms. Lucas does not know the exact number, dates and times of such calls. By information and belief, Collection Receivables maintains records of such calls and can produce same in the instant proceeding.

39. Collection Receivables left the following messages on the voice mail of Ms. Lucas:

<u>Voicemail Transcription (transcribed 10/30/2020)</u>

*Hi this is [unintelligible] I need you to call me back, its extremely important. 706-736-6746.*

<u>Voicemail Transcription #2 (transcribed 11/02/2020)</u>

*Hi this is Rita, call me back, 706-736-6746.*

40. Despite calling Ms. Lucas repeatedly, Collection Receivables has not communicated with Ms. Lucas in writing.

## COUNT I - ACTION FOR VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. §1692 *ET SEQUI.*)

41. This is action for violation of 15 U.S.C. §1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA")

42. Ms. Lucas realleges and reaffirms the allegations contained in Paragraphs 1 through 40 above as if set forth hereat in full.

43. At all times material hereto, Ms. Lucas was a "consumer" as said term is defined under 15 U.S.C. §1692a (3).

44. At all times material hereto, Sequence Fitness was a "creditor" as said term is defined under 15 U.S.C. §1692a (4).

45. At all times material hereto, the Gym Bill was a "debt" as said term is defined under 15 U.S.C. §1692a (5)

46. At all times material hereto, Collection Receivables was a "debt collector" as said term is defined under 15 U.S.C. §1692a (6).

47. As more particularly described above, Collection Receivables has violated the FDCPA in that Collection Receivables has:

(a). communicated in connection with debt collection with third parties in contravention of 15 U.S.C. §1692b and c(b);

(b). engaged in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in contravention of 15 U.S.C. §1692d;

(c). caused a telephone to ring repeatedly or constantly with the intent to annoy, abuse or harass any person at the called number in contravention of 15 U.S.C. §1692d (5);

(d).    placed telephone calls without meaningful disclosure of the caller's identity in contravention of 15 U.S.C. §1692d (6);

(e)    used false, deceptive, or misleading representations in connection with the collection of any debt in contravention of 15 U.S.C. §1692e;

(f)    failed to disclose in the initial communication with Ms. Lucas as a consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in any subsequent communication that the communication is from a debt collector in contravention of 15 U.S.C.§1692e (11); and

(g)    used unfair and unconscionable means to collect or attempt to collect a debt in contravention of 15 U.S.C. §1692f.

48.    15 U.S.C. §1692g provides, in pertinent part, the following:

### Notice of Debts; Contents

Within five days after the initial communication from the consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer written notice containing:

(a)  The amount of the debt;

(b)  The name of the creditor to whom the debt is owed;

(c)  A statement that unless the consumer, within thirty days after receiving the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(d)  A statement that if the consumer notifies the debt collector in writing within the thirty day period, the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (e) A statement that upon the consumer's written request within the thirty day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

49. The Defendants violated the requirements of 15 U.S.C. §1692g by failing to provide Ms. Lucas with a notice of validation rights as required by the FDCPA

50. As a direct and proximate result of the violation of the FDCPA by Defendants, Ms. Lucas has been damaged. The damages of Ms. Lucas include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation, and embarrassment.

51. Pursuant to 15 U.S.C. 1692k, Ms. Lucas is entitled to recover actual damages together with statutory damages of $1,000.00, along with court costs and reasonable attorney's fees.

52. Ms. Lucas has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Heidi Lucas, an individual, demands judgment against Defendant, Collection Receivables, Inc., a Georgia corporation, for compensatory and statutory damages, together with interest, costs and attorney's fees pursuant to 15 U.S.C. §1692k, and for such other and further relief as justice may require.

## COUNT II - ACTION FOR VIOLATION OF THE
## FLORIDA CONSUMER COLLECTION PRACTICES ACT

53. This is action for damages for violation of the Florida Consumer Collection Practices Act ("FCCPA") brought herein pursuant to the doctrine of pendant jurisdiction.

54. Ms. Lucas realleges and reaffirms the allegations contained in Paragraphs 1 through 40 above as if set forth hereat in full.

55. At all times material hereto, the Gym Bill constituted a "debt" or "consumer debt" as said terms are defined under Florida Statutes §559.55(1).

56. At all times material hereto, Ms. Lucas was a "debtor" or "consumer debtor" as said terms are defined under Florida Statutes §559.55(2).

57. At all times material hereto, Sequence Fitness was a "creditor" as said term is defined under Florida Statutes §559.55(3).

58. At all times material hereto, Collection Receivables was a "debt collector" as said term is defined under Florida Statutes §559.55(6).

59. As more particularly described above, the Defendant violated the FCCPA in that the Defendant have:

(a). Disclosed to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false, in contravention of Florida Statute §559.72(5);

(b). Willfully communicated with the debtor with such frequency as can reasonably be expected to harass the debtor or her or his family or engaged in other conduct which reasonably can be expected to abuse or harass Ms. Lucas, in contravention of Florida Statute §559.72(7); and

(c). Asserted the existence of a legal right when such person knows the right does not exist, to wit: the right to have third parties convey messages to Ms. Lucas, in contravention of Florida Statute §559.72(9).

60. As a direct and proximate result of the violation of the FCCPA by the Defendant, Ms. Lucas has been damaged. The damages of Ms. Lucas include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation, and embarrassment.

61. Ms. Lucas has retained the undersigned law firm to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

62. Pursuant to Florida Statute §559.77, Ms. Lucas is entitled to recover actual damages and statutory damages of $1,000.00, together with reasonable attorney's fees and court costs.

WHEREFORE, Plaintiff, Heidi Lucas, an individual, demands judgment against Defendant, Collection Receivables, Inc., a Georgia corporation, for compensatory, statutory and punitive damages, together with interest, costs and attorney's fees pursuant to Florida Statutes §559.77.

## DEMAND FOR JURY TRIAL

Plaintiff, Heidi Lucas, pursuant to Rule 38, Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
(954) 763-8660
(954) 763-8607 (FAX)
E-mail: rwmurphy@lawfirmmurphy.com
*Counsel for Plaintiff*